## No. 11,632.

PEOPLE EX REL. WALKER, ET AL. *v.* STAPLETON, ET AL.

Decided June 28, 1926.

Action in mandamus.   Judgment for respondents.

*Affirmed.*

1.   COURTS—*Divided Opinion—Precedent.*   Where members of the appellate court are evenly divided on a case, and the judgment of the lower court affirmed by operation of law, the decision constitutes no precedent.

2.   OFFICES AND OFFICIALS—*Presumption.*   Members of the general assembly being elected and regularly sworn to perform their duties, the presumption is that they will do so.

   Such presumption does not exist as to petitioners who ask for the submission of a charter amendment to the electors.

3.   MUNICIPAL CORPORATIONS—*Elections—Charter Amendments.*   Under section 5 of the twentieth amendment to the Constitution, before an election may be called by the Denver city council to amend the charter, it must determine that the petition therefor bears the specified number of signatures, that the same question has not been submitted within the two preceding years, and that the proposed legislation does not diminish the state tax rates or interfere with the collection of state taxes.

4.   *Charter—Amendments.*   Article twenty of the Constitution in providing for the submission of charter amendments, does not permit the submission, as one, of many amendments. If more than one be submitted, the voter must be enabled to approve or reject them separately.

5.   *Officials—Elections—Legislation.*   Express pre-existing charter authority for the selection of city officials by legislation is unconstitutional.

*Error to the District Court of the City and County of Denver, Hon. Samuel W. Johnson, Judge.*

Mr. GEORGE Q. RICHMOND, for plaintiffs in error.

Mr. HENRY E. MAY, Mr. THOMAS H. GIBSON, Mr. GEORGE
A. CROWDER, for defendants in error.

*En banc.*

PER CURIAM.

DENVER is a "home rule" city, organized under article
XX of the state Constitution. Amendments to its char-
ter may be initiated by petition. When certain pre-
liminary steps have been taken and the petition is pre-
sented to the city council it is the duty of that body to
call an election. Relators, hereinafter referred to as
plaintiffs, alleging that they had so proceeded, but that
the city council refused to act, brought mandamus. To
review a judgment entered against them they prosecute
this writ.

We will assume that the petition in question purported
to present an amedument to the city charter, that it con-
tained the required number of signatures and a request
for the calling of a special election, that it came regularly
before the council and that said body refused to act. We
thus come at once to the only questions requiring con-
sideration: (1) Must the council, under such circum-
stances, call the election regardless of the invalidity of
the petition? (2) If not, was this, as claimed by the
council, an illegal petition?

1. This question was before this court in *Speer v.
People,* 52 Colo. 325, 122 Pac. 768. One of the Justices
did not sit. The remaining six divided equally, thus the
judgment was affirmed by operation of law, and consti-
tutes no precedent. Sec. 439, p. 183, C. L. 1921; *Menzell
v. McKee,* 71 Colo. 326, 206 Pac. 383.

In the Speer case three opinions were written. They
are liberally quoted from by counsel herein. They are
interesting, but, being without authority, are superflu-
ous. 15 C. J. p. 938, § 326.

Section 5, article XX, of our Constitution reads in part: "The citizens of the city and county of Denver shall have the exclusive power to amend their charter or to adopt a new charter, or to adopt any measure as herein provided;

It shall be competent for qualified electors in number not less than five per cent of the next preceding gubernatorial vote in said city and county to petition the council for any measure, or charter amendment, or for a charter convention. The council shall submit the same to a vote of the qualified electors at the next general election not held within thirty days after such petition is filed; whenever such petition is signed by qualified electors in number not less than ten per cent of the next preceding gubernatorial vote in said city and county, with a request for a special election, the council shall submit it at a special election to be held not less than thirty nor more than sixty days from the date of filing the petition; Provided, that any quetsion so submitted at a special election shall not again be submitted at a special election within two years thereafter.  *  *  * And no such charter, charter amendment or measure shall diminish the tax rate for state purposes fixed by act of the general assembly, or interfere in any wise with the collection of state taxes."

Section 6 of said article XX, reads in part: "It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters  *  *  *. The provisions of this section 6 shall apply to the city and county of Denver."

The council contends that the petition here in question was not a petition provided for by said article XX. Plaintiffs say that it purported to be such, and that, under the doctrine of *People v. Mills,* 30 Colo. 262, 70 Pac. 322, the council was without power to inquire further. The case is not in point. Under its facts the

Constitution imposed no duty on the secretary of state save to submit the amendment. The members of the General Assembly are duly elected officers, regularly sworn to discharge their duties, and all presumptions are that they do so. No such presumptions exist as to the acts of these petitioners. Said article XX expressly confers upon the council other duties than the single one of calling the election, and conditions the latter upon the former. Before an election may be called it must determine that the petition bears the signature of the specified number of electors, that the question submitted by it has not been so submitted within the two preceding years, and that the proposed legislation does not diminish the state tax rate or interfere with the collection of state taxes. If it may not also determine whether the measure proposed concerns local or municipal matters, elections might be forced on amendments to the federal Constitution, and the door be thrown wide to such a riot of attempted law making, so impotent and expensive, as, we are convinced, was beyond even the wildest dreams of the drafters of article XX.

It is not always easy to say that a proposed amendment does or does not deal with local or municipal matters, that it does or does not interfere with the collection of state taxes, or that it is or is not an old measure in a new dress. We see nothing incongruous in authorizing the council, entrusted with the power to determine those questions, to determine also whether the proposal is or is not an amendment, or a measure, or a call for a charter convention. We think the authority is the same for each, and that the amendment itself authorizes the council to decide, in the first instance, whether the thing presented is within the terms of the article. If the council thus participates in legislation it derives that power from the same source as plaintiffs derive their right to petition. This conclusion is not to be interpreted as authorizing the council to go outside the twentieth amend-

ment and assume to pass generally upon the constitutionality of proposed legislation. The powers and duties of that body, as well as the rights of petitioners, are circumscribed by that article.

2. The council says this petition was illegal because: (a) Several amendments on unrelated subjects were so combined in one that the voters must accept or reject them in toto; (b) the measure submitted was an attempt unlawfully to fill offices by legislation.

(a) The proposal is clearly subject to the objection raised. It establishes a public service commission, abolishes preferential voting, and provides for the apportionment of the cost of sewers. None of these is germane to either of the others. Each is, therefore, a separate amendment and must be separately adopted or rejected. The measure submits them as one. Article XX, in providing for the submission of "an amendment" does not permit the submission, as such, of "many amendments." If more than one be submitted the voter must be enabled to approve or reject them separately, otherwise the will of the electorate cannot be ascertained.

"Neither the constitutional limitation nor the statutory provisions expressly declare that only one purpose may be submitted at the same election, nor that, if more than one purpose may thus be submitted, each shall be separately stated. But the object of neither can be attained, and effect to the language in which they are expressed can not be given, unless such purposes be separately stated, * * *. To combine several distinct and independent purposes into one proposition * * *, is a clear evasion of the law, and, if permitted, would fritter away the safeguards thrown around such transactions." *City of Denver, et al. v. Hayes, et al.,* 28 Colo. 110, 115, 63 Pac. 311, 313; *Denver v. N. Y. Trust Co.,* 229 U. S. 123, 33 Sup. Ct. 657, 57 L. Ed. 1101.

(b) One division of the proposed amendment purported to establish the "city manager form of government"

in lieu of the present form. It created four principal elective offices, in some instances making but slight changes in the powers, duties, or titles of those in existence, and named the persons who were to fill those offices from the passage of the amendment until the general municipal election of 1931, though their terms were fixed at four years and the next such election, under the present charter, falls in 1927. Authority for this "election by legislation" is claimed in *Denver v. N. Y. Trust Co.*, *supra.* Assuming, but not holding, that the question raised was decided there, and that authority, if applicable, is controlling here, the case is not in point. There the offices were newly created, the designation of the first incumbents was but an incident essential to effectuate the legislation, the term specified was merely the vacancy intervening before a regular election, and the method of filling that vacancy was not contrary to existing law. If these officers, under the terms of this purported amendment, held only until the regular election of 1927, there would be some basis for the argument of the applicability of the authority last cited. Here, however, not only are the offices created, if at all, by merely transfering duties and slightly altering titles, but with election dates and terms unchanged, the new officials, in a single instance, are each invested with one and a quarter terms by a law which would not be in force when the votes on the officials, or many of them, were cast, and in defiance of a law then existing. If this scheme is feasible and constitutional, state primaries and elections may be junked by the simple expedient of an amendment naming state officers and embodying therein some temporarily popular change in the state Constitution. The fallacy of the theory lies in its failure to distinguish between legislation and election, between form of government and official personnel. Under the American system, deeply rooted in state and federal Constitutions, laws are enacted, officials are elected or appointed.

Another answer to the argument advanced in support of the attempt here made is to be found in the opinion of Mr. Justice Campbell in *City of Denver v. Hayes, supra.* Official personnel and form of government being separate and distinct, voters are entitled to an opportunity to accept the one and reject the other. Moreover, under the purported amendment here in question, the official terms were four years and at the general municipal election of 1927 voters would be entitled to express their preference for officials for the four-year term thereafter ensuing. That right is guaranteed them by the state Constitution.

"This means that every qualified elector shall have an equal right to cast a ballot for the person of his own selection, and that no act shall be done by any power, civil or military, to prevent it. Such is the mandate and spirit of the Constitution, and it thereby vests in the elector a constitutional right of which he can not lawfully be deprived by any governmental power." *Littlejohn v. People,* 52 Colo. 217, 223, 121 Pac. 159, Ann. Cas. 1913D, 610.

As the purported amendment makes no provision for the exercise of the right so guaranteed, and in fact strips the electorate of it, its submission constitutes an attempt to exercise a power not conferred by article XX of the Constitution, but expressly prohibited by section 1, article VII, and section 5, article II thereof. *Littlejohn v. People, supra.* Hence even express, pre-existing charter authority for the selection of city officials by legislation would be unconstitutional.

For the foregoing reasons we hold that the city council, in the instant case, had the right to determine, subject to a court review of its decision, whether the measure submitted was authorized by the twentieth amendment; and was correct in its conclusion that it was not so authorized because it combined several amendments in one and provided for the selection of officials by legislation.

The judgment is accordingly affirmed.

Mr. Chief Justice Allen and Mr. Justice Campbell not participating.